UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPRINKLE, PHILIP; SOLITZ, NICOMEDES; HOLLAND, RODNEY; GOETZ, JOSEF; AND HALL, DICKIE,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL DYNAMICS LAND SYSTEMS,<br><br>Defendant. | No. C09-1672Z<br><br>ORDER |

THIS MATTER comes before the Court on Defendant General Dynamics Land Systems' Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss, docket no. 6. Having considered all papers filed in support of and in opposition to the motion, the Court enters the following Order.

**Background**

Plaintiffs Philip Sprinkle, Nicomedes Soliza, Rodney Holland, Joseph Goetz, and Dickie Hall (collectively "Plaintiffs") are all former employees of Defendant General Dynamics Land Systems. Complaint ("Compl."), docket no. 1, ¶¶ 9-13. Defendant provides defense contracting to the United States government and operates a facility in Auburn, Washington, where Plaintiffs were employed. Id. ¶ 6.

Each Plaintiff is a disabled veteran who began working for Defendant sometime between January 3, 2004, and May 8, 2007. Declaration of Philip Sprinkle, docket no. 9,

ORDER  -1-

¶¶ 3-4; Declaration of Nicomedes Soliza, docket no. 10, ¶¶ 3-4; Declaration of Rodney Holland, docket no. 11, ¶¶ 3-4; Declaration of Josef Goetz, docket no.13, ¶¶ 3-4; Declaration of Dickie Hall, docket no. 14, ¶¶ 3-4. Defendant discharged each Plaintiff on either July 20, 2009, or July 21, 2009, for failing to pass a physical examination for deployment to a combat zone. Compl. ¶¶ 9-13.

On November 23, 2009, Plaintiffs filed this lawsuit alleging that Defendant failed to provide Plaintiffs with reasonable accommodations for their disabilities; discriminated against Plaintiffs on the basis of their age in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and discriminated against Plaintiffs on the basis of their disabilities in violation of the WLAD and the Americans With Disabilities Act of 1990 ("ADA"). Plaintiffs Hall and Goetz have further asserted a promissory estoppel claim against Defendant, alleging that they were induced to take their jobs with Defendant because they were promised that they would not be called upon to deploy overseas and that they would have long term employment with Defendant. Compl. ¶¶ 12-13. Plaintiffs Hall and Goetz allege that they were not told that there would be a possibility that they would be discharged for failing a deployment test, and relying on this information, each forwent other employment. Id. ¶ 33.

Defendant has a dispute resolution process ("DRP") which is described in Defendant's "Dispute Resolution Handbook." Declaration of Susan Williams, docket no. 24, ¶ 3, Ex. B (Dispute Resolution Handbook). Defendant's DRP involves four steps. Id., Ex. B, at 4. Step I is a "Functional Review." Id., Ex. B, § 1.0. Step II is a "Human Resources Review." Id., Ex. B, § 2.0. Step III is a "Management Appeals Committee" review. Id., Ex. B, § 3.0. A claim disputing a termination is initiated at Step III. Id. Step IV in Defendant's DRP is "Arbitration of Claims Alleging a Violation of Certain Legally Protected Rights." Id., Ex. B, § 4.0. In order to utilize the arbitration process, "the employee must have filed a claim with

ORDER  -2-

the Management Appeals Committee[,] received a decision from the Management Appeals Committee," and requested in writing that his claim be submitted to arbitration. Id., Ex. B, §§ 4.1.4, 4.2.1, 4.2.2.

Plaintiffs each signed a "Dispute Resolution Policy Agreement for New Hires" ("DRP Agreement"), which states that Plaintiffs "agree to the exclusive resolution of all claims arising out of or relating to [their] application for employment, employment, or termination of employment by the terms of [Defendant's DRP]." Williams Decl. ¶¶ 3, 6, 9, 13, 16, Ex. A (Sprinkle DRP Agreement), D (Soliza DRP Agreement), F (Holland DRP Agreement), I (Goetz DRP Agreement), K (Hall DRP Agreement). The claims covered under the DRP Agreement

> shall include, but are not limited to, all statutory or common law claims for wages, breach of any express or implied promises, torts, discrimination on any basis, but shall not include claims for workers [sic] compensation, unemployment compensation, claims for preliminary injunctive relief as to intellectual property and trade secrets, or claims under any benefit plans or other agreements that have their own dispute resolution procedures.

Williams Decl., Ex. A (Sprinkle DRP Agreement). The DRP Agreement further states that Plaintiffs "understand that, as a result of [the DRP] Agreement, [they and Defendant] have waived the right to jury trial, and to file any lawsuit except as may be necessary to enforce the terms of [the DRP] Agreement." Id.

Plaintiffs, however, each allege that they did not receive a copy of the Dispute Resolution Handbook until after they were discharged and that they were never told and never read anything that said that employment disputes were subject to mandatory arbitration. Sprinkle Decl. ¶¶ 7, 8; Soliza Decl. ¶¶ 7, 8; Holland Decl. ¶¶ 7, 8; Hall Decl. ¶¶ 7, 8; Goetz Decl. ¶¶ 7, 8. Each Plaintiff alleges that he did not knowingly and voluntarily enter into the arbitration agreement and, even if each Plaintiff did enter into the arbitration agreement knowingly and voluntarily, that the DRP Agreement is unconscionable under Washington law.

ORDER -3-

Defendant has asked this Court to compel Plaintiffs to arbitrate their claims against Defendant pursuant to the DRP Agreement. In support of its motion to compel arbitration, Defendant attached various documents to its motion. Plaintiffs have moved to strike those documents, arguing that the documents are inadmissible hearsay.

**Discussion**

**A.     Plaintiffs' Motion to Strike the Evidence Attached to Defendant's Motion**

In their response to Defendant's motion, Plaintiffs move to strike the evidence attached as Exhibits A-F to Defendant's motion. Plfs.' Resp., docket no. 8, at 5. Plaintiffs argue that these Exhibits are inadmissible hearsay because the documents are unauthenticated. Defendant argues that these documents are admissible because they were incorporated by reference into Plaintiffs' complaint. Defendant has, in addition, filed Susan Williams's Declaration authenticating Exhibits A and C-F.[1]

Defendant did not authenticate Exhibit B to Defendant's motion; Exhibit B consists of offer letters for employment. In their complaint, Plaintiffs reference employment contracts signed by each Plaintiff. Compl. ¶¶ 9-13. The documents in Exhibit B are all offer letters for employment from Defendant and signed by Plaintiffs on either their original hire date or at the time of some change in their employment. Def.'s Motion, Ex. B; see also, Compl. ¶¶ 9-13.

The Court DENIES Plaintiffs' motion to strike Defendant's Exhibits A-F. The Court finds that Defendant has authenticated Exhibits A and C-F with Susan Williams's Declaration. The Court further finds that Exhibit B, consisting of offer letters for employment, is incorporated by reference into Plaintiffs' complaint.

---

[1] The citations to Defendant's evidence as used in this Order are to the documents as authenticated in the Williams Declaration.

ORDER  -4-

### B. Defendant's Motion to Compel Arbitration

#### 1. Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, mandatory arbitration clauses are enforceable "save upon such grounds as exist at law or in equity for revocation of any contract." Id. § 2. A court must stay proceedings when an issue before the court is referable to arbitration, id. § 3, and must issue an order compelling arbitration if either party refuses to comply with the terms of the arbitration agreement. Id. § 4. Like the FAA, Washington law also provides that agreements to arbitrate are enforceable. RCW 7.04A.060.

The FAA embodies a broad federal policy favoring arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25-26 (1991); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987); Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Supreme Court has held that, where a valid employment contract exists, employment disputes are subject to mandatory arbitration pursuant to the FAA. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 120 (2001). However, despite the federal policy favoring arbitration, there must be "at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived [his] comprehensive and statutory rights, remedies and procedural protections . . . ." See Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1304 (9th Cir. 1994) (discussing waiver of rights under Title VII and related state statutes).

"In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" Adams, 279 F.3d at 892 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). In Washington, the party opposing arbitration bears the burden of showing that the agreement is not enforceable. Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302 (2004).

**2.     Whether the Arbitration Agreement is a Valid Contract**

Defendant argues that the Court should compel Plaintiffs to arbitrate their claims because Plaintiffs have asserted claims that fall within the scope of the DRP Agreement. Defendants arbitration process applies to all employment related legal claims between an employee and Defendant, including discrimination, retaliation, and contract claims. Williams Decl., Ex. B, §§ 4.1.1, 4.1.3.  Plaintiffs argue, however, that they should not be compelled to arbitrate their claims because the DRP Agreement was not supported by consideration and was not entered into knowingly.

In order for a contract to be valid, there must have been an offer, acceptance of the offer, and consideration. See Yakima County Fire Prot. Dist. No. 12 (West Valley) v. Yakima, 122 Wn.2d 371, 389-90 (1993).  An offer of employment may constitute consideration for a party's consent to subject his future employment related legal claims to arbitration.  See Equal Employment Opportunity Comm'n v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742, 749-50 (9th Cir. 2003) (Civil Rights Act of 1991 does not preclude employers from requiring employees to arbitrate their future Title VII claims as a condition of employment).  Defendant argues that its offer of employment constituted consideration for Plaintiffs' agreement to submit their employment related claims to arbitration.  In their declarations, Plaintiffs testify that they were given several documents to sign after they were "hired and on the clock." Sprinkle Decl. ¶ 4; Soliza Decl. ¶ 4; Holland Decl. ¶ 4; Hall Decl. ¶ 4; Goetz Decl. ¶ 4.  Plaintiffs declarations, and their individual DRP Agreements, show that Plaintiffs signed the arbitration agreements on the day that Plaintiffs began working for Defendant. Williams Decl. ¶¶ 3, 6, 9, 13, 16, Ex. A (Sprinkle DRP Agreement), D (Soliza DRP Agreement), F (Holland DRP Agreement), I (Goetz DRP Agreement), K (Hall DRP Agreement); Sprinkle Decl. ¶ 4; Soliza Decl. ¶ 4; Holland Decl. ¶ 4; Hall Decl. ¶ 4; Goetz Decl. ¶ 4.  In addition, Plaintiffs argue that they were required to sign these documents, in order to work for Defendant.  Because Plaintiffs' signing of the DRP Agreement so closely

ORDER  -6-

coincides with the commencement of their employment, the Court finds that there is sufficient evidence to show that the offer of employment was consideration for Plaintiffs' agreement to arbitrate their employment related legal claims.

In order for a party's agreement to arbitrate his employment disputes to be valid, the waiver of a judicial forum must also be a knowing one. See Lai, 42 F.3d at 1304.  Plaintiffs argue that the DRP Agreement is invalid because it fails to contain any language evincing a knowing and specific waiver of Plaintiffs' right to have their discrimination and ADA claims adjudicated in a judicial forum.

Plaintiffs argue that they were unaware of the breadth of the arbitration agreement that they signed.  Plaintiffs argue that they were not given a copy of the Dispute Resolution Handbook, which contained more detailed language relating to the arbitration agreement, until they were discharged.  Sprinkle Decl. ¶¶ 4-8; Soliza Decl. ¶¶ 4-8; Holland Decl. ¶¶ 4-8; Hall Decl. ¶¶ 4-8; Goetz Decl. ¶¶ 4-8.  In addition, Plaintiffs argue that the documents that each Plaintiff signed at the beginning of his employment were signed in haste, and that the DRP Agreement's significance was not explained to Plaintiffs.  Defendant argues, however, that each Plaintiff was provided a copy of the Dispute Resolution Handbook, and each expressed his assent to arbitration by signing the DRP Agreement.

The Court finds that regardless of whether Plaintiffs received the Dispute Resolution Handbook when they signed the DRP Agreement, the terms of the DRP Agreement were clear, and they cover Plaintiffs' discrimination and ADA claims.  Each of the DRP Agreements reads as follows:

> Agreement to Submit All Covered Claims to Dispute Resolution Policy
>
> By this agreement (the "Agreement"), **I agree to the exclusive resolution of all claims arising out of or relating to my** application for employment, employment, or **termination of employment by the terms of the company's dispute Resolution Policy ("DRP")** attached hereto as Exhibit A.
>
> **The claims covered by this Agreement, shall include, but are not limited to, all statutory or common law claims for wages, breach of any express or implied promises, torts, discrimination on any basis,** but shall not include

ORDER  -7-

> claims for workers [sic] compensation, unemployment compensation, claims for preliminary injunctive relief as to intellectual property and trade secrets, or claims under any benefit plans, pension plans or other agreements that have their own dispute resolution procedures.
>
> **I understand that, as a result of this Agreement, I and the Company have waived any right to a jury trial, and to file any lawsuit** except as may be necessary to enforce the terms of this agreement.

Williams Decl., Ex. A (Sprinkle DRP Agreement), D (Soliza DRP Agreement), F (Holland DRP Agreement), I (Goetz DRP Agreement), K (Hall DRP Agreement) (emphasis added). The DRP Agreement describes the kinds of discrimination and ADA claims that Plaintiffs allege in the present suit. The DRP Agreement explicitly states that Plaintiffs waived any right to a jury trial on such claims, and Plaintiffs have not alleged that they were subject to any fraud, duress, or coercion when they signed the DRP Agreement. The Court concludes as a matter of law that Plaintiffs knowingly and voluntarily agreed to arbitrate their current claims.

### 3. Unconscionability

Even if each Plaintiffs' DRP Agreement was supported by consideration and was entered into knowingly and voluntarily, Plaintiffs argue that the DRP Agreement should not be enforced because it is unconscionable. Washington law recognizes two kinds of unconscionability, substantive and procedural. Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 898 (2001). The burden of proving that a contract or clause is unconscionable is upon the party raising the issue of unconscionability. Id.

#### a. Procedural Unconscionability

Procedural unconscionability involves the lack of a meaningful choice considering all of the circumstances surrounding a transaction, including (1) the manner in which a contract was entered; (2) whether each party had a reasonable opportunity to understand the terms of the contract; and (3) whether the important terms were hidden in a maze of fine print. Zuver, 153 Wn.2d at 303; Tjart, 107 Wn. App. at 898. These three factors should not be applied

ORDER  -8-

mechanically without regard to whether in truth a meaningful choice existed. Zuver, 153 Wn.2d at 303.

### i. *The Manner in Which the Contract was Entered*

Plaintiffs argue that the DRP Agreement is a contract of adhesion which prevented them from having a meaningful choice as to whether to sign the DRP Agreement. In determining whether a contract is one of adhesion, the court considers (1) whether the contract is a standard form printed contract; (2) whether the contract was prepared by one party and submitted to the other on a take it or leave it basis; and (3) whether there was no true equality of bargaining power between the parties. Zuver, 153 Wn.2d at 304.

Defendant does not argue that the DRP Agreement is not a standard, form printed contract that was prepared by Defendant and presented to the Plaintiffs, or that there were any negotiations surrounding Plaintiffs' signing of the DRP Agreement. Under these circumstances, the Court finds that the DRP Agreement is a contract of adhesion. However, before determining whether the DRP Agreement is procedurally unconscionable, the Court must examine whether each party had a reasonable opportunity to understand the terms of the contract and whether the important terms of the DRP Agreement were hidden in a maze of fine print. See Zuver, 153 Wn.2d at 303.

### ii. *Whether Each Party had a Reasonable Opportunity to Understand the Terms of the Contract*

Plaintiffs assert that they do not remember signing the agreements to arbitrate; they did not know that they were agreeing to arbitrate discrimination claims; no one explained the DRP to them; and they did not receive a copy of the Dispute Resolution Handbook until their terminations. Sprinkle Decl. ¶¶ 4-8; Soliza Decl. ¶¶ 4-8; Holland Decl. ¶¶ 4-8; Hall Decl. ¶¶ 4-8; Goetz Decl. ¶¶ 4-8. Defendant argues that, because each Plaintiff signed the DRP Agreement and had a reasonable opportunity to understand its terms, these allegations do not alleviate Plaintiffs from the requirement to arbitrate. See Tjart, 107 Wn. App. at 897 ("One

ORDER -9-

1  who accepts a written contract is conclusively presumed to know its contents and to assent to
2  them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting
3  party."). Plaintiffs' own testimony indicates that Defendant's Human Resources
4  representatives were available to talk to Plaintiffs about the documents they were signing.
5  Sprinkle Decl. ¶ 5 (stating that Human Resources representatives came in and out of the
6  room while Plaintiff was signing documents, and these representatives talked to the
7  employees who were being processed about various things); Soliza Decl. ¶ 5; Holland Decl.
8  ¶ 5; Hall Decl. ¶ 5; Goetz Decl. ¶ 5. Plaintiffs had a reasonable opportunity to ask
9  Defendant's representatives questions in order to clarify the meaning of the DRP Agreement,
10 but Plaintiffs chose not to. See Sprinkle Decl. ¶¶ 5, 7; Soliza Decl. ¶¶ 5, 7; Holland Decl.
11 ¶¶ 5, 7; Hall Decl. ¶¶ 5, 7; Goetz Decl. ¶¶ 5, 7. That Plaintiffs had a reasonable opportunity
12 to understand the meaning of the DRP Agreement weighs in favor of finding that the
13 agreement is not procedurally unconscionable.

### iii. *Whether the Important Terms were Hidden in a Maze of Fine Print*

16 The important terms of the DRP Agreement were not "hidden in a 'maze of fine
17 print.'" See Adler v. Fred Lind Manor, 153 Wn.2d 331, 349 (2004). Rather, the short DRP
18 Agreement clearly states that Plaintiffs agreed to "the exclusive resolution of all claims
19 arising out of or relating to [Plaintiffs'] . . . termination of employment by the terms of
20 [Defendant's] [D]ispute Resolution Policy." Williams Decl., Ex. A (Sprinkle DRP
21 Agreement); D (Soliza DRP Agreement); F (Holland DRP Agreement); I (Goetz DRP
22 Agreement); K (Hall DRP Agreement). The DRP Agreement used normal typeface and font-
23 size; is only half of a page long; and states just above each Plaintiffs' signature that Plaintiffs
24 understand that they and Defendant "have waived the right to a jury trial, and to file any
25 lawsuit except as may be necessary to enforce the terms of this Agreement." Williams Decl.,
26 Ex. A (Sprinkle DRP Agreement); D (Soliza DRP Agreement); F (Holland DRP Agreement);

ORDER  -10-

1  I (Goetz DRP Agreement); K (Hall DRP Agreement).

2  Defendant also argues that the DRP Agreement is not procedurally unconscionable because each Plaintiff availed himself of the Dispute Resolution Process by initiating a claim under the DRP contesting his termination before filing this lawsuit.[2] An individual who has invoked the DRP by challenging his termination before instituting a lawsuit demonstrates an assent to be bound by the DRP. See Hightower v. GMRI, Inc., 272 F.3d 239, 243 (4th Cir. 2001) (employee who initially brought claim under dispute resolution procedure evinced agreement to be bound by the entire dispute resolution process). The Court finds that this conduct weighs in favor of finding that the DRP Agreement is not procedurally unconscionable.

### *iv.* *Conclusion Re: Procedural Unconscionability*

The Court concludes that the DRP Agreement is not procedurally unconscionable. Although Plaintiffs testify that they had little opportunity to read the documents given to them to sign after being hired by Defendant; that they did not read anything that said employment disputes were subject to mandatory arbitration; and that they did not receive or see the Dispute Resolution Handbook until after they were discharged, Plaintiffs' declarations also indicate that they had an opportunity to speak to Human Resources representatives about the documents Plaintiffs were signing to understand the terms of the agreement. Sprinkle Decl. ¶¶ 4-8; Soliza Decl. ¶¶ 4-8; Holland Decl. ¶¶ 4-8; Hall Decl.

---

[2] Plaintiff Sprinkle instituted the DRP by sending a letter requesting review of his termination to the Human Resources Director of Personnel Relations under § 2.2 of the Dispute Resolution Handbook on July 31, 2009. Williams Decl. ¶ 4, Ex. C (Sprinkle Letter). Plaintiff Soliza requested that the Management Appeals Committee review his termination under § 3.0 of the Dispute Resolution Handbook on July 31, 2009. Williams Decl. ¶ 7, Ex. E (Soliza Letter). Plaintiff Holland sent Defendant a letter disputing his termination and an Arbitration Request Form on August 14, 2009. Williams Decl. ¶¶ 10, 11, Ex. G (Holland Letter), H (Holland Arbitration Request). Plaintiff Goetz sent an email challenging his termination to Mr. Fokken on September 17, 2009. Williams Decl. ¶ 13, Ex. J (Goetz Email) (Based on Defendant's Exhibit M to the Williams Declaration, a letter from Plaintiffs' counsel, Mr. Fokken is probably a member of Defendant's Human Resources Department. Plaintiffs' counsel apparently mistakenly identified Mr. Fokken as Mr. Sokkan in that letter. See Williams Decl. ¶ 21, Ex. M.). Plaintiff Hall also sent an email to Mr. Fokken challenging his termination on September 17, 2009. Williams Decl. ¶ 17, Ex. L (Hall Email).

ORDER -11-

¶¶ 4-8; Goetz Decl. ¶¶ 4-8.  In addition, the terms of the DRP Agreement were not hidden in a maze of fine print.  See Williams Decl., Ex. A (Sprinkle DRP Agreement), D (Soliza DRP Agreement), F (Holland DRP Agreement), I (Goetz DRP Agreement), K (Hall DRP Agreement).

### b. Substantive Unconscionability

"Substantive unconsciousability 'involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh.'"  Tjart, 107 Wn. App. at 898 (citing Nelson v. McGoldrick, 127 Wn.2d 124, 131 (1995)).  Plaintiffs argue that the DRP Agreement is substantively unconscionable because its time limitation is unreasonable and it lacks mutuality.

#### i. Whether the Time Limitation is Substantively Unconscionable

Plaintiffs argue that the arbitration clause of the Dispute Resolution Handbook is substantively unconscionable because it contains a 30-day limitations period for requesting arbitration once a claim for reconsideration is denied.  Plaintiffs argue that a 30-day limitations period serves to deprive any party who attempts to avail himself of the administrative process of the Equal Employment Opportunity Commission ("EEOC") or other agency of his day in court or in any other forum.

The DRP is a multi-step process that may, for certain claims, culminate in arbitration.  Step I is a "Functional Review" which "applies to any controversy, dispute, or claim that employees or former employees may have regarding their employment" and must be initiated by the employee within 60 days of the event that caused the dispute; however, if the claim is based on a legally protected right, "the 60 day period is extended to the time period (i.e., statute of limitations) provided by the applicable law."  Id., Ex. B, §§ 1.0, 1.1, 1.2.  Step II is a "Human Resources Review" which applies to any dispute or claim an employee may have which was not resolved in the Functional Review.  Id., Ex. B, §§ 2.0, 2.1.  "A letter requesting review must be submitted to the Human Resources Director of Personnel

ORDER  -12-

Relations . . . within 14 days of the date of receipt of the request."[3]  Id., Ex. B, § 2.2.

In Step III of the DRP, the claim goes to a "Management Appeals Committee." Id., Ex. B, § 3.0.  In general, claims presented to the Management Appeals Committee must be "written and submitted to the Human Resources Director of Personnel Relations within 14 days after the date of the decision of the Human Resources Review." Id., Ex. B, § 3.2.  However, a claim disputing a termination "is initiated at [Step III] and must be filed within one year after the termination." Id.  If the claim is based upon a legally protected right, the time limitation for Section III is extended to "any time within the time period (i.e., statute of limitations) provided by the applicable law, or within one year, whichever time period is greater." Id.

Step IV in Defendant's DRP is "Arbitration of Claims Alleging a Violation of Certain Legally Protected Rights." Id., Ex. B, § 4.0.  The Arbitration process applies to "any controversy, dispute or claim, including the arbitrability of any controversy, dispute or claim, between an employee not represented by a labor union and [Defendant] which arises out of or relates to the employment relationship and which is based on a legally protected right." Id., Ex. B, § 4.1.1.  The Dispute Resolution Handbook states that the arbitration process

> does not prohibit an employee from filing a charge with the Equal Employment Opportunity Commission, the National Labor Relations Board, or similar federal, state or local agency.  However, upon receipt of a right-to-sue letter or similar administrative determination, employee is required to use the procedures of this [DRP].

Id.  Thus, the Court finds that the timing limitations provision for filing a claim for arbitration under the DRP is not limited to 30 days because an employee can initiate the dispute resolution process any time within the statutory limitations period for filing his

---

[3] It is unclear whether the letter requesting review must be submitted to the Human Resources Director of Personnel within 14 days of any final decision at the Functional Review level or within 14 days of when the initial request for review was filed at the Functional Review level.  For the purposes of Defendant's motion to compel arbitration, however, the outcome of Defendant's motion is the same because the overall time period in which Plaintiffs must file their claims is greater than 30 days.

ORDER  -13-

claims that are based upon a legally protected right.

In addition, although Plaintiffs argue that employees are forced to forgo the opportunity to have the EEOC or Washington Human Rights Commission ("WHRC") investigate and possibly mediate their dispute, the DRP does not so limit Plaintiffs' claims. Section 4.1.1 of the Dispute Resolution Handbook states that the arbitration process "does not prohibit an employee from filing a charge with the [EEOC], the National Labor Relations Board, or similar federal, state or local agency. However, upon receipt of a right-to-sue letter or similar administrative determination, employee is required to use the procedures of this [DRP]." Williams Decl., Ex. B § 4.1.1. Thus, Plaintiffs may file charges against Defendant with the EEOC or WHRC, but Plaintiffs must use the DRP once they receive a right to sue letter from the administrative agency.

### ii. *Whether the DRP Agreement is Unilateral*

Plaintiffs also argue that the arbitration agreement is substantively unconscionable because it is unilateral and favors Defendant in that all disputes involving employment are likely to be brought by an employee. Plaintiffs argue that the only conceivable claims that Defendant would bring against an employee would be for a breach of confidentiality or for a claim for intellectual property rights, and Defendant may apply to a court and seek interim, provisional, injunctive or other equitable relief for those claims. See Williams Decl., Ex. B, § 4.1.7. Plaintiffs argue that if the agreement were truly bilateral, it would allow for injunctive relief to prevent Defendant from failing to accommodate employees with disabilities and for injunctive relief for discriminatory conduct.

Defendant argues that the DRP Agreement is mutual because it requires Plaintiffs and Defendant to arbitrate all employment disputes except those related to workers' compensation; unemployment compensation; intellectual property and trade secrets; and claims under any benefit plan, pension plan, or other agreement that has its own dispute resolution process. See Williams Decl., Ex. A (Sprinkle DRP Agreement), D (Soliza DRP

ORDER -14-

Agreement), F (Holland DRP Agreement), I (Goetz DRP Agreement), K (Hall DRP Agreement).

In <u>Walters v. A.A.A. Waterproofing, Inc.</u>, 120 Wn. App. 354, 360, 361 (2004), the court found that Walters's claim of substantive unconscionability based on a lack of mutuality failed when both parties were required to arbitrate all claims related to their employment agreement, except those claims related to noncompetition and confidentiality. Although Walters argued that the agreement required that he waive all of his rights with respect to dispute resolution while A.A.A. reserved its right to pursue claims against Walters for revealing confidential information and for breaching his covenant not to compete in court, the court found that both parties were bound by the arbitration agreement, and thus, the arbitration provision did not lack mutuality. <u>Id.</u> at 360, 361.

Similarly, the DRP Agreement requires Plaintiffs and Defendant to arbitrate employment disputes except those related to workers' compensation; unemployment compensation; intellectual property and trade secrets; and claims under any benefit plan, pension plan, or other agreement that has its own dispute resolution process. Because Plaintiffs and Defendant are all bound by the DRP Agreement, and because Plaintiffs and Defendant are all limited in the claims that they can bring outside of arbitration, the Court finds that the DRP Agreement does not lack mutuality.

### *iii.     Conclusion Re. Substantive Unconscionability*

Because the DRP Agreement is not unilateral and does not contain an unreasonable time limitation for the filing of claims, the Court finds that the DRP Agreement is not substantively unconscionable.

### 3.     Conclusion Re. Motion to Compel Arbitration

For the foregoing reasons, the Court finds that the DRP Agreement was supported by valid consideration; was entered into knowingly and voluntarily; is not procedurally unconscionable; and is not substantively unconscionable. Thus, the Court GRANTS

ORDER   -15-

Defendant's Motion to Compel Arbitration and ORDERS that all other proceedings in the present suit are STAYED pending arbitration of Plaintiffs' claims.

IT IS SO ORDERED.

DATED this 30th day of March, 2010.

                                        Thomas S. Zilly
                                        United States District Judge

ORDER -16-